IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

LAKES GAS CO.,

       Plaintiff,

vs.

D & J FEED SERVICE, INC.;
CAMPBELL OIL CO., INC.;
JOHNSON OIL & L.P. CO.; and
HANSEN GAS & HARDWARE CO.,

       Defendants.

No. C11-1013

RULING ON POST-TRIAL
MOTIONS

## TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.    Motion for Attorney Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     B.    Motion for Judgment as a Matter of Law . . . . . . . . . . . . . . . . 8
          1.    Judgment Notwithstanding the Verdict . . . . . . . . . . . . . . 8
          2.    New Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     C.    Motion to Amend the Judgment to Include Prejudgment
          and Postjudgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
          1.    Prejudgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . . 13
          2.    Postjudgment Interest . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.   ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

## I. INTRODUCTION

This matter comes before the Court on the Motion for Attorney Fees (docket number 63) filed by the Plaintiff on January 28, 2013, the Motion for Judgment as a Matter of Law (docket number 69) filed by the Plaintiff on February 11, 2013, and the Motion to Amend the Judgment to Include Pre- and Post-Judgment Interest (docket number 70) filed by the Plaintiff on February 12, 2013. Pursuant to Local Rule 7.c, the motions will be decided without oral argument.

## II. PROCEDURAL HISTORY

On June 1, 2011, Plaintiff Lakes Gas Co. ("Lakes") filed a complaint seeking damages against Fencl Oil & L.P. Co., Inc., D & J Feed Service, Inc. ("D&J Feed"), Campbell Oil Co., Inc. ("Campbell Oil"), Johnson Oil & L.P. Co. ("Johnson Oil"), and Hansen Gas & Hardware Co. ("Hansen Gas").[1] Lakes claimed breach of contract, civil conspiracy, intentional interference with a principal-agent relationship, and aiding and abetting a fraud.

The matter came on for trial to a jury beginning on January 7, 2013. On January 11, the jury returned a verdict in favor of Lakes on its breach of contract claim against D&J Feed, Campbell Oil, and Hansen Gas.[2] On Lakes' claims against Johnson Oil, however, the jury found in favor of Johnson Oil. On January 14, judgment entered in accordance with the jury's verdict.

---

[1] Fencl Oil & L.P. Co., Inc. was later dismissed as a defendant.

[2] The jury found for Defendants on Lakes' claims of civil conspiracy and aiding and abetting a fraud. Lakes' claim of intentional interference with a principal-agent relationship was voluntarily withdrawn prior to trial.

On January 28, Lakes filed the instant motion for attorney fees, asking the Court to award attorney fees and costs against Campbell Oil and Hansen Gas.[3] On February 11, Lakes filed a motion arguing that, notwithstanding the jury's verdict, the Court should enter judgment against Johnson Oil or, alternatively, grant a new trial against Johnson Oil. On February 12, Lakes filed a motion asking that the judgments against Campbell Oil and Hansen Gas be amended to include prejudgment and postjudgment interest.

## III. DISCUSSION

### A. Motion for Attorney Fees

This case was submitted to the jury on Lakes' claim that Defendants breached their contracts, conspired with David Stevenson to convert Lakes' gas or defraud Lakes, and aided and abetted David Stevenson in defrauding Lakes. The jury concluded that Lakes proved its claim for breach of contract against three of the four defendants. The jury further concluded that Lakes had failed to prove its claims of civil conspiracy and aiding and abetting fraud. Lakes asks that it be awarded attorney fees on its successful contract claim.

The parties agree that Iowa law governs Lakes' claim for attorney fees. Generally, attorney fees are not recoverable unless there is statutory authority for an award of attorney fees, or a written contractual provision allowing such an award. *Hockenberg Equipment Co. v. Hockenberg's Equipment & Supply Co.*, 510 N.W.2d 153, 158 (Iowa 1993). Iowa law explicitly authorizes the recovery of attorney's fees when contained in a written contract.

---

[3] On February 1, Lakes filed a Receipt and Satisfaction (docket number 65) regarding the judgment entered against D&J Feed. In their resistance to the instant motion, Campbell Oil and Hansen Gas assert that Lakes "agreed to a reduction of the judgment due and owing by D&J Feed Service, which included a tacit waiver of any attorney fees due and owing by D&J Feed Service." Resistance (docket number 66) at 4. In any event, Lakes does not ask that attorney fees be awarded against D&J Feed.

> When judgment is recovered upon a written contract
> containing an agreement to pay an attorney fee, the court shall
> allow and tax as a part of the costs a reasonable attorney fee to
> be determined by the court.

Iowa Code § 625.22.

Preliminarily, the Court must determine whether Lakes adequately pleaded its entitlement to attorney fees. In its complaint, Lakes seeks compensatory damages, punitive damages, interest, "and the costs of this action." In their resistance, Defendants assert "[t]he Complaint did not request the recovery of attorney fees in its prayer for relief nor otherwise allege a basis upon which attorney fees could be granted."[4]

This issue was addressed directly by the Court in *Townsend v. Nickell*, 2009 WL 928697 (Iowa App.). There, the defendant requested in his answer "that the court dismiss plaintiffs' petition at plaintiffs' cost." *Id.* at *4. After a successful defense to a disputed land contract, the defendant asked for attorney's fees. The Court noted that section 625.22 states that attorney fees will be taxed "as a part of the costs." Accordingly, a request for the recovery of costs sufficiently included a request for recovery of attorney fees. *Id.* ("For these reasons, we conclude Nickell's failure to specifically mention attorney fees in his answer does not preclude his right to recover fees."). Therefore, the Court concludes Lakes' claim for "costs" in its complaint permits its present claim for attorney fees.

Defendants next argue that attorney fees are not recoverable in this case because Lakes' claim was not based on a *written* contract. Instead, Lakes sought damages for breach of oral contracts entered into by David Stevenson on Defendants' behalf. In response, Lakes points to credit applications submitted by Campbell Oil and Hansen Gas.

On October 4, 2006, Lester J. Campbell, acting as President of Campbell Oil, signed a "commercial credit application" on a form submitted by North America Energy

---

[4] Resistance to Plaintiff's Motion for Attorney Fees (docket number 66) at 2, ¶ 5.

(a division of Lakes). On August 13, 2007, William J. Hansen signed an identical form on behalf of Hansen Gas. Immediately above their signatures, the form states:

> I/we give this information for the purpose of obtaining credit and certify that the above information is true and correct. Authorization is hereby given to check credit records, trade and banking references if applicable. If approved, I/we agree to make payment to North America Energy according to their terms. No further delivery or service will be provided until the previous balance is paid in full. Discounts, when applicable, will be allowed if the account is paid in full and received in our office within 10 days of delivery. It is further agreed that a charge of 1.5% monthly on the unpaid balance will be charged on amounts not paid within the above terms, and *I/we will pay any and all costs to collect on the account, including attorney fees.* It is understood that delinquent accounts will have their credit suspended.

Commercial Credit Application, Defendants' Exhibits X and Y (docket numbers 63-5 and 63-6) (emphasis added). Hansen had also signed a credit application on May 13, 2003, which included similar language. *See* Exhibit X.

It should be recalled that Campbell Oil and Hansen Gas are in the retail LP gas business. That is, they purchase LP gas from wholesale suppliers, such as Lakes, and deliver the gas to retail customers, such as farmers and rural homeowners. According to the parties' stipulation of facts, Lakes sells approximately 50 million gallons of gas each year, with approximately 40,000 customers, and has 46 distribution plants throughout the country. Gas is transported by a pipeline to a distribution center, where it is picked up by a retailer, such as Campbell Oil or Hansen Gas, and delivered to end users.

In addition to the sale of gas for actual use by customers, however, Lakes buys and sells gas stored in a huge underground cave near Conway, Kansas. A storage lessee at the Conway facility can transfer product to the account of another storage lessee by means of

a Product Transfer Order ("PTOs"). The parties do not contemplate actual delivery of gas purchased or sold in the Conway facility pursuant to PTOs.

Lakes does not claim that Campbell Oil or Hansen Gas failed to pay for LP gas actually delivered for resale. Instead, Lakes sued for non-payment of oral contracts entered into by David Stevenson, acting on behalf of Campbell Oil and Hansen Gas, for the purchase of LP gas stored underground in Kansas. Those agreements, which never contemplated the actual delivery of gas, were memorialized by PTOs and invoices. Howard Sargeant, the owner of Lakes, testified that he would not extend credit to Stevenson because "he had already demonstrated to us that he couldn't handle money well." In fact, the parties stipulated that "[p]rior to August 2003, Howard Sargeant and Steve Sargeant learned that David Stevenson, through his company Ray Energy, had traded propane using the name of customers without the customers' knowledge and consent."[5]

Because Lakes did not trust Stevenson, it would not allow Stevenson to enter into PTOs on his own behalf. Stevenson side-stepped this hurdle, however, by calling Lakes and contracting for the purchase of large sums of gas, ostensibly on behalf of retailers such as Campbell Oil and Hansen Gas. To protect itself, Lakes would send an invoice for the PTO purchases directly to the retailer. Initially, Stevenson apparently conducted these transactions without obtaining any approval of the retailers. When a retailer would receive the invoice from Lakes, Stevenson would claim it was an accounting error, and would send a check to the retailer to cover the amount owed. Eventually, the retailers, including Campbell Oil and Hansen Gas, willingly participated in the transactions, although the gas purchases were generally made without the retailers' advance knowledge.

The evidence supports a finding that Campbell Oil and Hansen Gas regularly received invoices from Lakes for PTO purchases, were reimbursed by Stevenson for those

---

[5] Final Pretrial Order (docket number 45) at 3, ¶ 10.

amounts — plus a small mark-up — and then paid the invoices. Because of this practice, the jury concluded that Stevenson had apparent authority to enter into oral contracts for PTOs on behalf of Campbell Oil and Hansen Gas. During the last week of July 2008, Stevenson contracted with Lakes, ostensibly on behalf of the four defendants, for PTO purchases totaling nearly $4 million.[6] Stevenson assumed ownership of the stored gas and apparently resold it, without paying the retailers. Accordingly, the retailers, including Campbell Oil and Hansen Gas, were left holding the bag. That is, Lakes demanded payment from Campbell Oil and Hansen Gas, despite the fact that Stevenson disposed of the gas for his own benefit.

The jury concluded that Stevenson had apparent authority to act on behalf of Campbell Oil and Hansen Gas and, therefore, found that Lakes was entitled to recover on its contract claim. The issue raised in the instant motion is whether attorney fees are properly awarded for breach of the oral contracts. The PTOs and invoices did *not* include any provision for the payment of attorney fees. In its reply, Lakes argues that "[w]hile it is true that the PTO invoices were used at trial to prove the existence of an oral contract between Lakes Gas and the Judgment Debtors, it is the *written* credit applications that provided the remedies for credit transactions."[7]

As noted above, Lakes did not specifically seek the recovery of attorney fees in its complaint, nor did it offer into evidence the credit applications which it now claims provides authority for its claim. Instead, the credit applications were offered by Defendants. Defendants argued to the jury that the comparatively modest assets owned by Campbell Oil and Hansen Gas should have alerted Lakes to the fact that they were not the

---

[6] It is the Court's understanding that additional PTO purchases were made by Stevenson, ostensibly on behalf of other retailers, which are not part of this lawsuit.

[7] Lakes' Reply (docket number 68) at 2, ¶ 2.

real actors in the PTO transactions. That is, Defendants argued that Lakes knew or should have known — based on Stevenson's prior transactions with Lakes, Lakes' knowledge of Stevenson's prior practice of "trading propane using the name of customers without the customers' knowledge and consent," and Defendants' comparatively modest financial positions — that Stevenson was the real player on the PTOs.

The Court concludes that there is no evidence to support a finding that Lakes relied on the credit applications in entering into the PTOs. The language in the credit application states that "if approved," the applicant will make payment according to the terms. The record is silent regarding whether the applications were "approved." The credit application further states that "[n]o further delivery or service will be provided until the previous balance is paid in full." This suggests that the application was submitted for the actual delivery of LP gas for resale to end users, and was not applicable to PTOs, in which the actual delivery of gas stored underground in Kansas was never contemplated by any party. Finally, the credit application states that the applicant will pay all costs "to collect on the account." Again, this suggests an open account for the delivery of LP gas to distribution centers for resale to retail customers.

In Iowa, a reasonable attorney fee shall be allowed "[w]hen judgment is recovered upon a written contract containing an agreement to pay an attorney fee." Iowa Code § 625.22. Here, judgment was entered on an oral contract. The Court concludes that Lakes has failed to meet its burden of proving that the parties had a written agreement, applicable to the claims made in this lawsuit, which provided for the payment of attorney fees. Accordingly, Lakes' motion for attorney fees will be denied.

### B. Motion for Judgment as a Matter of Law

### 1. Judgment Notwithstanding the Verdict

This case was submitted to the jury on Lakes' claims of breach of contract, civil conspiracy, and aiding and abetting fraud. The jury found in favor of Lakes and against

D & J Feed, Campbell Oil, and Hansen Gas on Lakes' contract claim only. The jury also found that Lakes had not proved any of its claims against Johnson Oil. Lakes now asks that the Court enter judgment as a matter of law against Johnson Oil on the contract claim.

The fighting issue at trial was whether David Stevenson acted as an agent for Defendants when entering into oral contracts to purchase LP gas, as referred by Product Transfer Orders ("PTOs"). Because Stevenson owed Lakes approximately $3 million from their prior transactions, Lakes would not allow Stevenson to contract on his own behalf. In finding against D & J Feed, Campbell Oil, and Hansen Gas, the jury necessarily concluded that Stevenson was acting as an agent on their behalf. In finding for Johnson Oil, however, the jury apparently concluded that Stevenson was *not* authorized to act as Johnson Oil's agent.

There is evidence in the record which supports the jury's conclusions in this regard. Lakes didn't trust Stevenson and, it appears, neither did Randi Johnson. Johnson testified that in April or May 2007, he talked to Patty Balfanz, an employee at Lakes, regarding the PTOs. According to Johnson, he told Balfanz "do not do a transaction without calling me first and getting commitment from me, because, I said, Dave is doing these without my knowledge."[8]

Patty Balfanz confirmed in her deposition, which was offered into evidence at trial, that Randi Johnson asked her to contact him for approval of PTO contracts ostensibly entered into by Stevenson on Johnson Oil's behalf. A similar arrangement was made with Fencl Oil. In an email dated October 3, 2007, Balfanz wrote to Ken Fencl to confirm a PTO. Fencl confirmed the PTO in a reply. Balfanz then forwarded the reply to Stevenson, with the additional message: "no word from Randi yet." *See* Exhibit 29. Balfanz testified that by at least October 3, 2007, her practice was to obtain prior approval

---

[8] Trial testimony of Randi Johnson, 359:20-23 (docket number 77 at 44).

from Johnson Oil before invoicing for a PTO transaction. Balfanz would call Randi Johnson and ask "if he was willing to purchase this, if he had actually approved the sale." It is undisputed, however, that Lakes did not contact Johnson Oil regarding the four PTOs issued in July 2008, which are the subject of Lakes' complaint.

Randi Johnson called Jane Boyer, another employee at Lakes, on August 7, 2008 — after Stevenson's fraud became known — and told her that the PTOs were not authorized and Johnson Oil accepted no responsibility for them. On the following day, Johnson wrote to Boyer, stating:

> Johnson Oil & LP denies we owe payment on any PTO that was billed to us. My conversation with you on Aug. 7, 2008 was that there was not supposed to be any PTO's charged without verbal or written consent by Randi Johnson which you said you were fully aware of and allowed it to happy anyway.

Plaintiff's Exhibit 31. Johnson did not receive any response from Lakes.

The Court may direct the entry of judgment as a matter of law, notwithstanding the jury's verdict, if it finds that a reasonable jury would not have a legally sufficient evidentiary basis to support its verdict. FED. R. CIV. P. 50(b). That is, the Court must ascertain "whether there is sufficient evidence to support a jury verdict." *Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 875 (8th Cir. 2000). The Court must look at the evidence in the light most favorable to the verdict, giving the non-moving party (Johnson Oil) the benefit of all reasonable inferences. *Emmenegger v. Bull Moose Tube Co.*, 324 F.3d 616, 619 (8th Cir. 2003). The Court does not "judge the credibility of witnesses or weigh the evidence." *Id.* In determining whether to grant or deny judgment as a matter of law, the Court gives "great deference" to the jury's verdict. *Fletcher*, 220 F.3d at 875. "A jury verdict will not be set aside unless 'there is a complete absence of probative facts to support the verdict.'" *Walsh v. National Computer Systems, Inc.*, 332

F.3d 1150, 1158 (8th Cir. 2003) (quoting *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 634 (8th Cir. 1998)).

While testifying at trial, Randi Johnson flatly denied that he had authorized Stevenson to act as Johnson Oil's agent in entering into PTOs. Obviously, the jury could have found Johnson credible in that regard. There was also evidence to support a finding that Stevenson lacked apparent authority to act for Johnson Oil. Patti Balfanz testified that Johnson asked her to contact him for approval of PTO contracts sought by Stevenson, ostensibly on Johnson Oil's behalf. Her testimony is consistent with an email she sent to Stevenson. Viewing the evidence in the light most favorable to Johnson Oil, and giving "great deference" to the jury's verdict, the Court concludes that there is clearly evidence to support a finding that Stevenson lacked actual or apparent authority to act for Johnson Oil. Accordingly, the motion for judgment as a matter of law will be denied.

### 2. New Trial

Alternatively, Lakes asks the Court to order a new trial, pursuant to FEDERAL RULE OF CIVIL PROCEDURE 59. Lakes argues that "passion or prejudice influenced the jury because of the size of Lakes Gas' demand." Lakes also argues that "the verdicts among the defendants are inconsistent."

The decision to grant or deny a motion for new trial rests within the sound discretion of the trial court. *Sanford v. Crittenden Memorial Hosp.*, 141 F.3d 882, 884 (8th Cir. 1998). The Court may grant a new trial when the verdict in the first trial was against the weight of the evidence, resulting in a miscarriage of justice. *Trickey v. Kaman Indus. Technologies Corp.*, 705 F.3d 788, 807 (8th Cir. 2013). *See also Foster v. Tim Warner Entm't Co., L.P.*, 250 F.3d 1189, 1197 (8th Cir. 2001) ("A new trial is only appropriate if the verdict was against the great weight of the evidence so as to constitute a miscarriage of justice.").

Here, Lakes asserts the jury's verdict was influenced by "passion or prejudice." The jury found in favor of Lakes and against D & J Feed in the amount of $903,105, against Campbell Oil in the amount of $1,187,025, and against Hansen Gas in the amount of $706,335. Nonetheless, Lakes argues that when it came time to consider the claim against Johnson Oil, "passion or prejudice influenced the jury because of the size of Lakes Gas' demand." That is, Lakes asserts that having awarded $2,796,465 against three of the defendants, the jury had reached its spending limit, and "passion or prejudice" would not allow it to award an additional $1,136,415 against Johnson Oil. This argument defies logic and has no factual basis. There is simply no reason for the Court to believe that in finding for Johnson Oil, the jury was unduly influenced by the amount of damages being sought by Lakes.

In asking for a new trial, Lakes also asserts the verdicts are "fundamentally inconsistent." On the contrary, the verdicts suggest the jury carefully considered Lakes' claims against each defendant individually. For the reasons set forth above, there was clearly a basis for the jury to differentiate between Johnson Oil and the other three defendants. When possible, the Court must harmonize potentially inconsistent verdicts, "viewing the case in any reasonable way that makes the verdicts consistent." *Bird v. John Chezik Homerun, Inc.*, 152 F.3d 1014 (8th Cir. 1998); *Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339, 1347 (8th Cir. 1996) (same). Because the jury could find that Stevenson did not have actual or apparent authority to act on behalf of Johnson Oil, the verdicts reached by the jury are not inconsistent.

### C. *Motion to Amend the Judgment to Include Prejudgment and Postjudgment Interest*

Pursuant to the jury's verdict, judgment was entered in favor of Lakes and against Campbell Oil in the amount of $1,187,025, and against Hansen Gas in the amount of $706,335. Lakes asks that prejudgment and postjudgment interest be assessed on those

amounts.[9] Specifically, Lakes asks that prejudgment interest accrue at the rate of 1.5% per month or, alternatively, 5% per annum, from August 6 or 7, 2008 (seven days after the PTOs were entered) to January 14, 2013 (when judgment was entered). Lakes also asks that interest accrue postjudgment.

### 1.    *Prejudgment Interest*

The Court will first address the question of prejudgment interest. State law governs prejudgment interest in a diversity action. *Berglund v. State Farm Mut. Auto. Ins. Co.*, 121 F.3d 1225, 1230 (8th Cir. 1997). Accordingly, it is necessary to review Iowa law to determine if Lakes is entitled to prejudgment interest and, if so, from what date and at what rate.

Initially, the Court notes that when a plaintiff's damages are complete prior to the filing of the petition, the issue of prejudgment interest is *not* governed by Iowa Code sections 535.3 and 668.13. *Schimmelphennig v. Eagle Nat. Assur. Corp.*, 641 N.W.2d 814, 816 (Iowa 2002) ("We are convinced that neither section 668.13(1) nor section 535.3 governs the entitlement to interest from a point in time prior to the filing of a petition."). *See also Gosch v. Juelfs*, 701 N.W.2d 90, 92 (Iowa 2005) (recognizing that section 668.13 "does not govern in those situations in which our case law has provided that interest may be allowed from a date prior to the filing of a petition").

Prejudgment interest is recoverable in Iowa "in cases in which the entire damage for which recovery is demanded was complete at a definite time before the action was begun." *Mrowka v. Crouse Cartage Co.*, 296 N.W.2d 782, 783 (Iowa 1980) (quoting *Bridenstine v. Iowa City Electric Ry.*, 165 N.W. 435, 439 (Iowa 1917)) (cited with approval in *Gosch*, 701 N.W.2d at 92). Here, Lakes' damages were "complete" when Campbell Oil and Hansen Gas failed to pay for the PTOs within seven days, as required

---

[9] Judgment was also entered in favor of Lakes and against D & J Feed in the amount of $903,105, but Lakes and D & J Feed apparently reached a post-trial settlement, and Lakes does not ask that interest be awarded on the judgment against D & J Feed.

by the invoices. Accordingly, the Court concludes that Lakes is entitled to prejudgment interest from August 6 or 7, 2008.[10]

The Court must next determine the rate at which prejudgment interest accrues. Under these circumstances, the rate of interest is governed by Iowa Code section 535.2. Specifically, interest on "money due by express contract" or "money after the same becomes due" shall be 5% per annum, "unless the parties shall agree in writing for the payment of interest at a rate not exceeding [that permitted by law]." § 535.2(1)(a)-(b). Here, Lakes argues that judgment for interest should enter at the rate of 1.5% monthly, as set forth in credit applications submitted by Campbell Oil and Hansen Gas. Alternatively, Lakes asks that judgment for interest enter at the rate of 5% per annum, pursuant to Iowa Code section 535.2.

The jury concluded that Campbell Oil and Hansen Gas are liable to Lakes for amounts owed pursuant to oral contracts entered into by Stevenson on their behalf, as evidenced by the PTOs and corresponding invoices. Neither the PTOs nor the invoices contained any reference to the payment of interest, or any interest rate. Lakes asserts the Court should incorporate the language found in the credit applications previously submitted by Campbell Oil and Hansen Gas. For the reasons described in more detail above, the Court rejects that argument. Accordingly, because the parties did not "agree in writing for the payment of interest" on the PTO contracts, the Court concludes that prejudgment interest is payable at the rate of 5% per annum, as set forth in section 535.2.

### 2. Postjudgment Interest

The Court will next address the issue of postjudgment interest. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). The federal postjudgment interest rate applies to cases tried in federal court,

---

[10] The invoices, which were introduced at trial as Exhibit K, were dated July 28, 29, 30, and 31, 2008.

even when the basis for jurisdiction was diversity. *Maddox v. American Airlines, Inc.*, 298 F.3d 694, 699-700 (8th Cir. 2002). *See also Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433, 1435 (8th Cir. 1991) ("In a diversity action, state law governs prejudgment interest; federal law governs postjudgment interest.").

Interest awarded pursuant to Section 1961(a) is calculated from the date of the entry of the judgment "at a rate equal to the weekly average 1-year constant maturity Treasury yield," for the week preceding the date of the judgments. Here, it is undisputed that the applicable interest rate was 0.14%. Accordingly, the judgments will be amended to include postjudgment interest from January 14, 2013 at the rate of 0.14%.[11]

## IV. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Motion for Attorney Fees (docket number 63) filed by Lakes is **DENIED**.

2. The Motion for Judgment as a Matter of Law (docket number 69) filed by Lakes is **DENIED**.

3. The Motion to Amend the Judgment (docket number 70) filed by Lakes is **GRANTED** as follows:

a. The judgment against Campbell Oil is **AMENDED** to provide for prejudgment interest at the rate of 5% per annum from August 7, 2008 to January 14, 2013. Postjudgment interest shall accrue at the rate of 0.14% per annum from January 14, 2013 until paid in full.

b. The judgment against Hansen Gas is **AMENDED** to provide for prejudgment interest at the rate of 5% per annum from August 6, 2008 to

---

[11] The Court notes parenthetically that postjudgment interest accrues on the entire amount owed, including prejudgment interest. *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991); *Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017, 1031 (4th Cir. 1993).

January 14, 2013. Postjudgment interest shall accrue at the rate of 0.14%
per annum from January 14, 2013 until paid in full.

DATED this __4th__ day of April, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA